Arthur J. Doran, Jr., Esq. Acting Corporation Counsel City of Yonkers
You have asked us whether a proposition filed with your City Clerk by your City's Charter Revision Commission under section 36 (5) (b) of the Municipal Home Rule Law would, if voted upon favorably by the voters this November, add a charter provision that is valid under the home rule powers of the City of Yonkers.
The proposed addition to be voted upon provides that "it shall be unlawful for the City government to impose any new taxes without first having obtained approval for same by public referendum to be held by general or special election". (The proposal also defines "new taxes".) On its face, this referendum provision is half-advisory, half-mandatory. That is, if the voters approve a proposed new tax, it is not unlawful for the city council to fail to impose the tax; but if the voters disapprove the tax, it is unlawful for the council to impose the tax.
You have suggested that the proposition is invalid under the well-settled rule that advisory referenda are not permitted (Matter of McCabe vVoorhis, 243 N.Y. 401 [1926]; Mills v Sweeney, 219 N.Y. 213 [1916];Kupferman v Katz, 19 A.D.2d 824 [1st Dept, 1963]; Silberman v Katz,54 Misc.2d 956 [Sup Ct, N Y Co, 1967], affd 28 A.D.2d 992).
Of these cases, McCabe is the leading authority. The local law involved in that case was also a half-advisory, half-mandatory referendum in the sense described above. In striking it down, the Court of Appeals ruled that no referendum can be held by a local government in the absence of constitutional or statutory authorization. "Government by representation is still the rule. Direct action by the people is the exception." (p 413.) The only place to find referendum power, the Court said, would be in the City Home Rule Law, then the source of the power to enact local laws. The Court found no such power in that law. (The Court literally found an absence of power by virtue of an overriding State statute. Nevertheless, McCabe is read to mean that there is no inherent home rule power to call for a referendum, whether advisory or conclusive. See, for example, Elkind v City of New Rochelle, 5 Misc.2d 296 [Sup Ct, Westchester Co, 1957], affd 4 A.D.2d 761, affd 5 N.Y.2d 836.) The Municipal Home Rule Law was patterned after the City Home Rule Law and, particularly so far as cities are concerned, varies little from the earlier law. Thus, precedents such as McCabe and Elkind, supra, are still viable.
The correctness of this reading of McCabe is demonstrated by Elfvin vCity of Buffalo, 19 N.Y.2d 280 (1967). After Mills v Sweeney, supra, was decided, the City of Buffalo, having lost, obtained a special act amending its charter to permit submission of policy questions to the voters (L 1920, ch 459). The special act provided, however, that the voters' decision was binding, thus providing for a conclusive referendum. The City subsequently carried over the words of the special act as a section in a new charter enacted by local law. In accordance with the charter section, the Common Council submitted for a referendum the question of whether it should impose a city sales tax. A taxpayer who was a member of the Common Council sought to prevent the submission, arguing that McCabe and other cases cited above precluded this sort of referendum. The Court of Appeals held, in effect, that the Buffalo charter provision was not an attempt to expand the home rule powers of voters to review legislative action not covered by the referendum requirements of the Municipal Home Rule Law (§§ 23 and 24), because the charter provision essentially only preserved a power specifically granted by the Legislature.
We conclude that a local government does not have the power by local law or charter provision to require or permit a referendum on issues other than those provided for by the Municipal Home Rule Law or other statutory authorization.